OPINION OF THE COURT
Franklin R. Weissberg, J.
The defendant has moved pursuant to CPL 30.30 to dismiss *687 the instant indictment because he was denied a speedy trial. He contends that far more than six months of delays chargeable to the People have occurred. The People oppose the application, and concede only 115 days of includable delays.
The defendant was arraigned on the accusatory instrument which commenced this action on October 12, 1989. He was charged with two counts of robbery in the first degree. The People agree that the delay between that initial arraignment and his subsequent arraignment on the instant indictment on October 30, 1989 — 18 days — must be charged to them. Complex plea negotiations involving a pending Brooklyn case and an outstanding parole violation, motion practice and the resolution of a possible conflict of interest on the part of the defendant’s attorney consumed the time between October 30, 1989 and April 3, 1990.
On April 3, 1990 the People answered ready for trial. The defendant’s attorney requested that a CPL article 730 examination be conducted to determine the defendant’s fitness to proceed, and the court granted the request. A series of adjournments followed, during which the defendant was examined by psychiatrists and reports were prepared.
While those events were occurring, the defendant was attempting to resolve his pending Brooklyn case and his parole violation. On June 11, 1990 he was sentenced on the Brooklyn matter, and on June 14, 1990 his parole was revoked. Because of his deteriorating psychiatric condition, the defendant was sent to a State psychiatric facility, and on July 7, 1990 he was placed in a State correctional facility.
On August 21, 1990 a report finding the defendant unfit to proceed was filed with the court. On October 2, 1990 the defendant’s attorney waived his client’s production and moved to confirm the report. The court then ordered the defendant committed to the custody of the Department of Mental Hygiene for a period of up to one year.
The order was served on the New York City Department of Correction. The defendant was not in their custody because he had been transferred to State custody. City Correction could not carry out the court order, and apparently no one in the State correctional system was made aware of its existence. As a result, the defendant was never committed to the Department of Mental Hygiene.
On December 5, 1991 and December 19, 1991 the defendant wrote letters to the Clerk of the Supreme Court, New York *688 County. The first letter asked about the status of the instant matter, and in the second letter the defendant sought to be produced in order to resolve this case. Responses to both letters were sent to the defendant, but copies of the letters were not forwarded to the Office of the District Attorney, and no action was taken to produce the defendant in this county.
On or about October 1, 1992, the defendant filed a pro se motion to dismiss the instant indictment. A copy was sent to the District Attorney’s Office, thereby informing it of the defendant’s location. The District Attorney’s Office then arranged to have the defendant produced on January 26, 1993, in Part 42 of Supreme Court, New York County. The People concede that the time between October 1, 1992 and January 6, when a court order was issued for the defendant’s production in this case, should be charged to them.
The defendant was produced from State correctional custody on January 26, 1993, and the People announced that they were ready for trial.
CONCLUSIONS OF LAW
The People disclaim responsibility for any of the delay which occurred between the defendant’s commitment to the custody of the Department of Mental Hygiene on October 2, 1990 and his letter of October 1, 1992 which informed the District Attorney’s Office of his whereabouts. They point out that under CPL 730.60 (2): "when a defendant is in the custody of the commissioner pursuant to * * * an order of commitment * * * the criminal action pending against the defendant in the court that issued such order is suspended until the superintendent of the institution in which the defendant is confined determines that he is no longer an incapacitated person.”
The defendant argues that since he was never in fact committed to the custody of the Commissioner of Mental Hygiene, the provisions of section 730.60 (2) are inapplicable. Alternatively, he argues that the "commitment” was for a period of one year, and once that period had expired, the District Attorney’s Office had a duty to monitor his status and location.
The People correctly insist that the failure to properly transport the defendant to the custody of the Commissioner of Mental Hygiene was not the fault of the People. Nevertheless, it is clear that an agency of the State — either the Department *689 of Correctional Services or the Department of Mental Hygiene —failed to take proper action. Delays in such circumstances are ordinarily not charged to the defendant, but to the State. (People v Masselli, 13 NY2d 1 [1963]; People v Sylvester, 29 AD2d 985 [2d Dept 1968]; People v Scott, 56 AD2d 667 [2d Dept 1977].)
The People point out, however, that the order committing the defendant to the custody of the Commissioner of Mental Hygiene occurred after they had announced readiness for trial. They argue that any postreadiness delays neither made nor caused by them should not be charged to them. (People v Giordano, 56 NY2d 524 [1982].)
This expansive reading of Giordano (supra) has been rejected by People v Anderson (66 NY2d 529, 538 [1985]). It is clear that even after they have announced readiness, the People will be charged with delays in producing a defendant for trial unless they establish due diligence in attempting to obtain his production as required by CPL 30.30 (4) (c) and (3) (b). (See, People v Jones, 105 AD2d 179 [2d Dept 1984], affd sub nom. People v Anderson, supra.) The due diligence issue requires a determination of whether, under these circumstances, the People had a duty to monitor the defendant’s status once he was ostensibly committed to the Commissioner’s custody.
In People v Santana (80 NY2d 92 [1992]), a majority of the Court of Appeals declined to consider whether such monitoring was required for speedy trial purposes. The Court held that "[t]he speedy trial statute specifically recognizes as a separate factor resulting in delay warranting an exemption from the time limitation 'the period during which defendant is incompetent to stand trial’ (CPL 30.30 [4] [a] [emphasis added]) —i.e., when, because of an existing determination of defendant’s unfitness to proceed due to his inability to understand the proceedings against him or to assist in his defense, the prosecution may not legally proceed to trial and conviction * * * It is the delay resulting from defendant’s determined condition and status as an incapacitated person and, as such, his unfitness to proceed to trial that is exempted from the time limitation” (at 102).
The People rely on Santana (supra) in claiming that they had no duty to monitor the defendant. Were this defendant actually committed to the custody of the Commissioner of Mental Hygiene, they might well be correct. When a defendant who has been committed to the Commissioner’s custody *690 approaches the expiration of the period prescribed in the order committing him, and the superintendent of the institution in which he is confined is of the opinion that he continues to be incapacitated, that superintendent must apply to the court for an order of retention. Notice must be given to the defendant and to the mental health information service. No notice need be given to the District Attorney. (See, CPL 730.50 [2].) Moreover, the District Attorney cannot demand a hearing in the matter, nor does he appear to have a right to be present if a hearing is held.
By contrast, the District Attorney must be notified when the superintendent determines that a defendant is no longer incapacitated. (See, CPL 730.60 [2].) The distinction appears to reflect a legislative determination that the prosecution should only be involved when it has been determined that the defendant is competent. The People argue that since the defendant has never been declared competent the exclusion continues, relying upon CPL 30.30 (4) (a) which includes among the periods which must be excluded from speedy trial time "the period during which defendant is incompetent to stand trial.”
However, this rigid interpretation of the statute is inherently unreasonable, given the facts of this case. This defendant has been in legal limbo for almost three years. He had another felony indictment pending in another county, and a parole violation. The existence of those matters warranted a search by the People once the period authorized by the order of commitment had expired. Any such search would have revealed the failure to properly commit the defendant to the Commissioner’s custody, and his presence in the State penal system. Even though the People had announced readiness prior to the defendant’s ostensible commitment, the time between the expiration of the one-year period set by the order of commitment and the discovery of the defendant’s whereabouts on October 1, 1992 must be charged to them. Therefore, the indictment is dismissed.